UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME J. CASIMIR and BETTY J. DUMAS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 15 C 3771 ) ) Judge Joan B. Gottschall |
| CITY OF CHICAGO *et al.*, | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jerome Casimir ("Casimir") and Betty J. Dumas ("Dumas"), allege that on July 22, 2014, two Chicago police officers, defendants David Cintron ("Cintron") and Christoph J. Fraterrigo ("Fraterrigo"), stopped them in the 3300 block of North Clark Street, harassed them, and forged their signatures on tickets for drinking in public. A separate civil rights lawsuit (referred to here as "*Romanski*") filed by Casimir and Dumas against other Chicago police officers was pending on that date. *See* Minute Entry, *Casimir v. Romanski*, No. 13 C 8774, ECF No. 34 (N.D. Ill. June 17, 2014) (Gettleman, J.) (continuing hearing to schedule settlement conference). Plaintiffs wrote the first three complaints filed in this case without a lawyer's help; they were "*pro se*." After the court recruited counsel for them (they proved that they could not pay the filing fee, *see* 28 U.S.C. § 1915(a), they filed an 11-count Third Amended Complaint ("TAC"), ECF No. 76, against the City of Chicago ("the City") and the officer defendants. The TAC asserts claims under Illinois law and 42 U.S.C. §§ 1981, 1983 , and 1985(3) for Fourth Amendment unreasonable search and seizure (Counts I and II), First Amendment retaliation for protected speech (Count III), fabrication of false evidence in violation of the Fourteenth Amendment's Due Process Clause (Count IV), race discrimination in violation

of the Equal Protection Clause (Count V), malicious prosecution in violation of the Fourth and Fourteenth Amendments (Count VIII) and Illinois law (Count IX), conspiracy to violate plaintiffs' constitutional rights (Count VI), a Monell count against the City (Count VII), a respondeat superior count against the City under Illinois law (Count X), and a claim for indemnification against the City under 745 Ill. Comp. Stat. 10/9-102 (Count XI).

Defendants move to dismiss several counts of the TAC for failure to state a claim. They argue that the federal claims for conspiracy, malicious prosecution, and retaliation are time-barred because they were pleaded for the first time in the TAC. Defendants also contend that the TAC fails to state claims for conspiracy, First Amendment retaliation, fabrication of evidence, race discrimination, and malicious prosecution. For the reasons that follow, the court grants the motion in part and denies it in part.

## I. BACKGROUND

### A. Procedural History

Initially the sole plaintiff, Casimir filed the original complaint on April 29, 2015. ECF No. 1, 6. Before defendants answered it, Casimir moved for leave to amend his complaint to add Dumas as plaintiff. ECF No. 16, 17. The court granted his request. ECF No. 22.

The original complaint and the FAC had four counts: Count One, § 1983 claim for "malicious harassment"; Count Two, § 1983 claim for "due process"; Count Three, claim for indemnity against the City of Chicago; and Count Four, "state law claim for respondeat superior." Defendants moved to dismiss the FAC for failure to state a claim. The court granted their motion but gave plaintiffs leave to replead Count I. ECF No. 32 at 1, 6.

Still *pro se*, plaintiffs filed their second amended complaint ("SAC"), ECF No. 40, on April 17, 2016, and defendants again moved to dismiss it. Plaintiffs retitled Count One

"malicious harassment claim and illegal search." SAC 2. The court granted defendants' motion in part and denied it in part, ruling that the SAC stated a Fourth Amendment claim and pleaded claims for equal protection, for malicious prosecution, and under the Illinois constitution. ECF No. 61 at 10–11. The court dismissed the Chicago Police Department as a party and plaintiffs' § 1983 respondeat superior allegations. *Id.* at 11.

After obtaining leave of court, recruited counsel filed the TAC on May 22, 2017. It identifies the officer defendants by name for the first time. TAC 1. The *pro se* complaints named one officer by badge number and the other as the "unknown policeman accompanying" the officer with that badge number. SAC 1, FAC 1, 2–3; Compl. 1, 2–3. The TAC identifies the two officers as Cintron and Fraterrigo; the badge number given in the pro se complaints belonged to Cintron. *Compare* TAC ¶¶ 5–6, *with* Compl. 1.

**B. Facts**

For purposes of deciding the Rule 12(b)(6) motion that is before the court, the court treats all the well-pleaded allegations in the TAC as true and draws all reasonable inferences in plaintiffs' favor. *See, e.g.*, *Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). To provide context the court begins by briefly summarizing where *Romanski* stood on July 22, 2014.

In December 2013, Casimir and Dumas initiated the *Romanski* litigation by filing a *pro se* complaint. *Romanski*, ECF No. 1, 7; TAC Ex. B. They asserted claims under §§ 1983 and 1985 for conspiracy, false arrest, and unlawful seizure against the City and three Chicago police officers assigned to Area 19, Stephen Romanski ("Romanski"), Martin Philbin, and Michael Stevens, arising out of Casimir's alleged arrest on November 14, 2013. *See* Compl. ¶¶ 2–3, 5, *Romanski*, ECF No. 1. The assigned magistrate judge was in the process of setting a date for a

settlement conference in July 2014. *See* Minute Entry, *Romanski*, ECF No. 34 (N.D. Ill. June 17, 2014) (setting next hearing for July 29, 2014). *Romanski* settled later in 2014. Stip. Dismissal 1, *Romanski*, ECF No. 47 (N.D. Ill. Oct. 21, 2014).

According to the TAC, Casimir and Dumas were married "[a]t all times relevant." TAC ¶ 12. Both are African American, and both were about 67 years old on July 22, 2014. TAC ¶¶ 11, 13.

On July 22, 2014, Casimir and Dumas were pulling suitcases through the 3300 block of North Clark Street, an area that is "predominantly white." TAC ¶¶ 14, 15. There had been a fire, and Casimir's suitcase contained clothing, groceries, and personal papers. TAC ¶ 18. A wheel on Casimir's suitcase broke, causing a can of beer in the suitcase to break and soak the suitcase's contents. TAC ¶¶ 16–17. So the two stopped at a bus stop, and Casimir began throwing some items in the trash and moving others to Dumas' suitcase. *See* TAC ¶¶ 19–20.

While Casimir was occupied with the suitcases, the officer defendants pulled up in an unmarked police car. TAC ¶ 22. Cintron and Fraterrigo, like Romanski, were assigned to Unit 4 of Chicago Police District 19 on July 22, 2014. *See* TAC ¶¶ 48–50; TAC Ex. C at 127, 128, 130. The other two officers named as defendants in *Romanski* also worked in Unit 19 that night. *See* TAC ¶¶ 51–52; TAC Ex. C at 106, 118.

Cintron and Fraterrigo jumped out of their unmarked car and yelled (even though Casimir and Dumas weren't drinking or holding a beer), "You drinking? I see a beer on the ground. Don't you lie to me, because I can take both of you down." TAC ¶¶ 23–28. Casimir and Dumas told the officers that they weren't drinking. TAC ¶¶ 29–30. The officers "indicated that they did not believe Plaintiffs," TAC ¶ 31, and searched Casimir's pockets and demanded to see Casimir and Dumas' identification, *see* TAC ¶¶ 32–33. Both eventually produced identification, which

Cintron and Fraterrigo checked. TAC ¶¶ 35, 37–38. One of the officer defendants returned and told plaintiffs they were free to go. TAC ¶ 39. Neither officer issued a ticket or "indicated" that one would be issued. TAC ¶¶ 40, 41.

Nevertheless, administrative default judgments issued on September 11, 2014, against Casimir and Dumas requiring each to pay a $500 fine and $40 in costs for drinking in a public way on July 22, 2014. TAC ¶ 54; *Id.* Ex. D & E. Casimir and Dumas received notices of the default orders a week later on September 18, 2014; it was the first notice of the tickets they received. TAC ¶¶ 54–56. They moved to set aside the default judgments, *see* TAC ¶ 57, and a hearing for Casimir was held on October 3, 2014, at which he testified that his signature on a ticket was forged, *see* TAC ¶¶57–60. The administrative law judge presiding declined to rule on whether the signature had been forged because no handwriting expert testified. TAC ¶ 63. The judge nonetheless imposed a $100 fine and $40 in costs on Casimir. TAC ¶¶ 67–68.

Dumas' hearing was held on November 7, 2014, and she likewise testified that her signature had been forged. TAC ¶¶ 69–71, 72 (also testifying that she was too old to drink beer). The judge found that the violation occurred and, like Casimir, ordered her to pay a $100 fine and $40 in costs. TAC ¶ 74–75. Dumas apparently sought review in Cook County Circuit Court, and on a date not specified in the TAC, her "ticket was dismissed by [that court] as unfounded and frivolous, and without proper cause to believe that the action filed was for a proper purpose." TAC ¶ 76.

Plaintiffs allege that they have been repeatedly stopped by police in the same general area of Chicago. TAC ¶ 78–79. About a week before the incident just described, two officers in an unmarked car, also covering their badges, stopped plaintiffs, forced them to stand with their

5

hands on a car's hood, patted them down, searched Casimir's pockets and bag, searched Dumas' purse, checked their identification, and then told them they could go. *See* TAC ¶¶ 79–88.

## II. RULE 12(b)(6) STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)); *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Twombly*, *supra*). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56; *see also Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) ("[T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). When deciding a motion to dismiss under Rule 12(b)(6), the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Katz-Crank*, 843 F.3d at 646 (citing *Iqbal*, 556 U.S. at 662, 663); *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. THE STATUTE OF LIMITATIONS

Defendants contend that three of the TAC's counts are time-barred: the First Amendment retaliation claim pleaded in Count III, the conspiracy alleged in Count VI, and Dumas' claim of malicious prosecution in Count VIII. The Seventh Circuit "has consistently held that the limitations period applicable to § 1983 actions brought in Illinois is the two-year period for

general personal injury actions set forth in 735 ILCS 5/13–202." *Woods v. Ill. Dep't of Children & Family Servs.*, 710 F.3d 762, 766 (7th Cir. 2013) (collecting cases). Even though the statute of limitations is an affirmative defense defendants have the burden to plead and prove, *see* Fed. R. Civ. P. 8(c)(1), it "may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

The TAC does not make clear when Dumas' malicious prosecution claim accrued. The accrual date ultimately proves immaterial, however, because the TAC's claims relate back to the timely filed original complaint and FAC under Federal Rule of Civil Procedure 15(c)(1)(B).

The court begins by calculating the date Counts III, VI, and VIII accrued. "'[A]ccrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief,' and this is true 'even though the full extent of the injury is not then known or predictable.'" *Woods*, 710 F.3d at 766 (quoting *Wallace v. Kato*, 549 U.S. 384, 388–91, (2007). Defendants say that Counts III, VI, and VIII accrued on July 22, 2014, when plaintiffs were allegedly stopped. In *Brooks* the Seventh Circuit held that the plaintiff's § 1983 claim of a conspiracy to prosecute him accrued on the date the indictment was returned. 578 F.3d at 579. His claim for malicious prosecution under the Due Process Clause accrued later, however, because "claims resembling malicious prosecution do not accrue until the prosecution has terminated in the plaintiff's favor." *Id.* (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 896 (7th Cir. 2001)); *accord Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013) (citations omitted).

The two-year limitations clock started counting down when Counts III and VI accrued on July 22, 2014, but the accrual date of Count VIII cannot be determined on the TAC's face.

7

Plaintiffs allege that they first learned of the forged tickets when they received a notice of default on September 18, 2014. TAC ¶¶ 41–43, 55–56. Under *Brooks*, plaintiffs' conspiracy and retaliation claims accrued on that date, but the complaint does not say when the Cook County Circuit Court dismissed Dumas' ticket. *See* TAC ¶¶ 76, 188 (alleging that ticket was dismissed "[u]pon information and belief"); *see also Gekas v. Vasiliades*, 814 F.3d 890, 95–96 (7th Cir. 2016) (rejecting argument that malicious-prosecution analysis should be used to determine accrual date of First Amendment retaliation claims because the two types of claims "are fundamentally different"). If the allegations in plaintiffs' original complaint are correct, the Cook County Circuit Court dismissed Dumas' ticket sometime after March 12, 2015, when plaintiffs allege they perfected the record on appeal in that court. *See* ECF No. 6 at ¶ 2. The court makes no finding on when the dismissal occurred, however because the TAC supersedes the original complaint. And on its face, the TAC does not establish the accrual date of the federal malicious prosecution claim pleaded in Count VIII. *See Julian*, 732 F.3d at 845; *Brooks*, 578 F.3d at 579. That is, the TAC does not contain everything needed to conclude that Count VIII is untimely, so Dumas didn't plead herself out of federal court in Count VIII. *See Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (citing *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)) (explaining that complaint does not need to anticipate affirmative defenses); *see also White v. City of Chicago*, No. 11 C 7802, 2014 WL 958714, at *2 (N.D. Ill. Mar. 12, 2014) (applying this rule to deny motion to dismiss § 1983 claim as time-barred).

Defendants also contend that *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), undermines *Brooks*' accrual rule, making either the date the police stopped plaintiffs or the date they received notice of the default judgments (September 18, 2014) the proper accrual date for all three counts

at issue. Defendants likely intend to preserve this issue pending the Seventh Circuit's decision on remand in *Manuel*. Not only did *Manuel* concern a Fourth Amendment claim for pretrial seizure rather than a malicious prosecution claim, it also expressly decided not to reach the accrual issue, leaving it for the Seventh Circuit on remand. *See id.* at 920–21. The Seventh Circuit has the accrual question before it. Unless and until it overrules *Brooks* and cases like it, this court must follow them. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (citing *United States v. Ramsey*, 785 F.2d 184 (7th Cir. 1986)); *Hoddenback v. Chandler*, No. 11 C 50348, 2015 WL 1201327, at *2 (N.D. Ill. Mar. 16, 2015) (holding Seventh Circuit case was binding precedent because the "Seventh Circuit [had] not overruled" it though it had "pondered whether a new approach" was necessary in a later case (quotation omitted)).

As for Counts III and VI, plaintiffs claim that the original complaint and the FAC, which were filed fewer than two years after July 22, 2014, included claims for conspiracy and First Amendment retaliation. They point to several paragraphs of the original complaint and the FAC.

Regarding the conspiracy claims, paragraph four of the original complaint stated in part that the "City of Chicago by and through its Police Department and (above named defendants) *conspired* to deprive plaintiff directly and indirectly of equal protection and privileges of the law for the purpose of hindering plaintiff['s] constitutional rights on July 22, 2014 by fraudulent concealment of a ticket . . . ." ECF No. 6 ¶ 4 (emphasis added); FAC ¶ 4 (same). Defendants acknowledge that plaintiffs tried to allege a conspiracy but argue that neither the original complaint nor the FAC gave them "notice of the nature and extent of the plaintiffs' conspiracy claim." Reply 3, ECF No. 108. They point out that the object of the alleged conspiracy appears to have been violation of the Equal Protection Clause in the first two complaints and that the

9

objectives alleged in the TAC are considerably broader. *Compare* Compl. ¶ 4, *with* TAC ¶¶ 152–62.

As for First Amendment retaliation, paragraph seven of the original complaint accused the officers who stopped Casimir on July 22, 2014, of "showing violence and disrespect to my wife looking like he wanted to fight *as I had a lawsuit against a police* in that district and believe they could be his friends." ECF No. 6 at ¶ 7 (emphasis added). The FAC, in which Dumas joined, again alleged that the officers "conspired" to deprive plaintiffs of their constitutional rights. ECF No. 24 ¶ 4. In paragraph seven, the FAC alleged even more explicitly that Dumas "was being harassed because of her race, age and due to retaliation." FAC ¶ 7. The paragraph arguably leaves the reader to wonder: retaliation for what? The next paragraph, construed only a little liberally, gives the answer, for it tracks the language already quoted from paragraph seven of the original complaint except that it says that one of the officers looked "like he wanted to fight as we had lawsuits against police(s) in that district." FAC ¶ 8.

Defendants misunderstand what is necessary for the TAC to relate back to the timely filing dates of the original complaint and FAC. Their citation to *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999), typifies their arguments. *Scott* and defendants' other cases don't consider whether an amended pleading relates back to an earlier one; *Scott* applies the federal notice pleading requirements, *see* Fed. R. Civ. P. 8(a)(2), to a complaint on a motion to dismiss it for failure to state a claim. *See id.* Defendants move to dismiss portions of the TAC, not the older complaints, however. Dkt. 95 at 1.

Asking whether the prior complaints stated a claim is the wrong question. Rule 15(c)(1)(B) specifies one of the circumstances in which an amended pleading's filing date relates back to an earlier pleading. The rule says that relation back occurs –when "the

amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—*or attempted to be set out*—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B) (emphasis added). All four complaints in this case arise out of the July 22, 2014, incident, which is all Rule 15(c)(1)(B) requires; conducting a Rule 12(b)(6)-type analysis of the prior complaints would effectively destroy Rule 15(c)(1)(B)'s "arose out of" test and require every prior complaint to state every claim in the live complaint for relation back to occur. *See, e.g., Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008) (holding "same transaction or occurrence" requirement "obviously" met where plaintiff sought to add claim against the government after suing individuals officers for negligence); *Batiste v. Dart*, No. 10-CV-3437, 2011 WL 4962945, at *5 (N.D. Ill. Oct. 19, 2011) (stressing that Rule 15(c)(1)(B) requires a transactional analysis); *cf. Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 555 (2010) (stressing that Rule 15(c)'s requirements are all that need to be met for relation back to occur when rejecting argument that courts should inquire into a party's diligence as they would when considering a request to amend a pleading under Rule 15(a)).

The TAC's claims against the officer defendants must also satisfy the notice requirements of Rule 15(c)(1)(C). Because the TAC "changes the party or the naming of the" officer defendants, the TAC's filing date relates back "if, within the period . . . for serving the summons and complaint," the officer defendants: "(i) received such notice of the action that [they] will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C) (numbering in original; *see also Krupski*, 560 U.S. at 548–57. Defendants conceded that the notice of Cintron's badge number given in the original complaint and the FAC satisfies these requirements, and, despite plaintiffs' lengthy discussion of

the issue in their response, Fraterrigo takes the issue of adequate notice under Rule 15(c)(1)(C) off the table in the reply to the instant motion. ECF No. 108 at 7 ("Defendants have not argued that Officer Frateriggo's [sic] addition as a party is untimely."). With that concession, the court need not discuss the issue further.

Accordingly, the TAC's filing date relates back to those of the original complaint and the FAC because the TAC "asserts . . . claim[s] . . . that arose out of the conduct, transaction, or occurrence set out—*or attempted to be set out*—in" those earlier pleadings. Fed. R. Civ. P. 15(c)(1)(B). The court need not explore plaintiffs' alternate grounds, which include an analysis of Illinois relation back law under Rule 15(c)(1)(A), and the doctrine of equitable tolling.

## IV. ANALYSIS OF CLAIMS IN THE TAC

Having dealt with the limitations issue, the court considers defendants' motions to dismiss certain counts of the TAC.

### A. First Amendment Retaliation (Count III)

"The First Amendment right to petition the government 'extends to the courts in general and applies to litigation in particular.'" *Novoselsky v. Brown*, 822 F.3d 342, 355 (7th Cir. 2016) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)); *see also Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995). Plaintiffs must allege three elements to state a First Amendment retaliation claim: (1) they "engaged in activity protected by the First Amendment;" (2) they "suffered a deprivation that would likely deter First Amendment activity;" and (3) their protected activity "was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618(7th Cir. 2017) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)) (other citation omitted). Defendants challenge only the second and third elements, so the court does not consider the first. *See id.* at 618–19.

On likely deterrence (the second element), defendants argue that the TAC does not say that the alleged harassment and ticketing interfered with the proceedings in *Romanski*. But the First Amendment does not penalize courage in the face of retaliation. The retaliatory action need only "be sufficient to deter an ordinary person from engaging in [the] First Amendment activity in the future." *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012) (citing *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)) (other citation omitted); *see also Bridges*, 557 F.3d at 552; *Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989) (holding that nontrivial threats and harassment are actionable). Given the pattern of harassment alleged in the TAC culminating in the issuance of false tickets, it is at least plausible that a person of ordinary firmness in plaintiffs' position would be likely to drop *Romanski* or to be deterred from filing another lawsuit to avoid future harassment and fines from fake tickets. *See Hoffman v. Dewitt Cnty.*, 176 F. Supp. 3d 795, 807 (C.D. Ill. 2016) (holding allegations that a county board member was excluded from board activities after he filed lawsuit stated First Amendment retaliation claim); *Nolan v. Vill. of Dolton*, No. 10 CV 7357, 2011 WL 1548343, at *3 (N.D. Ill. Apr. 21, 2011) (holding that single alleged act of police officer who said, "We know who you are and where you live . . . . You think I'm playing with you?" and wrote a false ticket stated First Amendment retaliation claim); *cf. Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) (holding plaintiff stated constitutional claim by alleging that Chicago police falsely issued 24 tickets to him in 14 months, noting that plaintiff had to go to court to get tickets dismissed).

On the third element defendants say that inferring causation from the fact that the officer defendants were in the same district as the officer defendants in *Romanski* is a "stretch," but they do not go so far as to cite a pleading case to show that the inference strays beyond the permissible at this stage. Mot. to Dismiss 7–8, ECF No. 95. Taking the pattern of harassment

alleged in the TAC as true (as the court must) a causal connection becomes plausible). *See Bridges*, 557 F.3d at 556–57; *cf. Geinosky*, 675 F.3d at 748 (holding that complaint stated equal protection claim because "the alleged facts so clearly suggest[ed] harassment by public officials that has no conceivable legitimate purpose").

Defendants also argue that the TAC's allegations and testimony at the administrative hearings to the effect that their race was another factor in the harassment undermines their First Amendment claims. Viewed favorably to plaintiffs, however, the TAC's allegations can be read as contentions that race and retaliation for filing *Romanski* were both motivating factors for the harassment. Indeed, the TAC identifies no other purposes. Plaintiffs have to allege no more than that their protected activity in *Romanski* "was at least a motivating factor for the retaliatory action," so the TAC plausibly alleges the third element. *Archer v. Chisholm*, 870 F.3d 603, 618(7th Cir. 2017) (citations omitted); *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Circ. 2012) (cited by defendants; applying rule at summary judgment); *see also Spiegla v. Hull*, 371 F.3d 928, 941–42 (citations omitted) ("[W]e disavow the requirement that a plaintiff alleging First Amendment retaliation has the burden of proving but-for causation . . . .").

The TAC states a First Amendment retaliation claim. The motion to dismiss Count III is denied.

**B. Due Process Claim for Fabricating Evidence (Count IV)**

Defendants argue that Count IV fails to state a claim because the TAC pleads the bare conclusion that plaintiffs were deprived of liberty, TAC ¶ 141, but the facts alleged make clear that they suffered no deprivation of liberty. *See Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016).

Plaintiffs abandon Count IV in their response, ECF No. 100, so the court dismisses it.

**C. Equal Protection Claim (Count V)**

To state an equal protection claim of race discrimination, plaintiffs must adequately allege "that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001) (citations omitted); *see also McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996). Defendants maintain that nothing in the TAC rises above the level of a threadbare conclusion of racial animus in the defendant officers' harassment.

Contrary to plaintiffs' argument, the court did not resolve this issue in its order on the motion to dismiss the SAC. ECF No. 61 at 8–9. Instead the order expressly noted that the claim could be found in the SAC but because defendants did not brief the equal protection issue, the court left the claim alone. *See id.*

The Seventh Circuit has acknowledged the serious problems posed by racial profiling; "[e]ven civil rights litigation must, however, satisfy the requirements of our equal protection jurisprudence." *Chavez*, 251 F.3d at 635 (collecting cases and further discussing federal courts' efforts to address profiling); *see also Smith v. City of Chicago*, 143 F. Supp. 3d 741, 755 (N.D. Ill. 2015) (explaining that a complaint need not make out a prima facie case of discrimination). And the pleading standard "require[s] no more from plaintiffs' allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally." *Triad Assocs., Inc. v. Robinson*, 10 F.3d 492, 497 (7th Cir. 1993) (citing *Elliott v. Thomas*, 937 F.2d 338, 345 (7th Cir. 1991)).

Plaintiffs' TAC includes several allegations, both general and specific, concerning racial profiling. The court must disregard the TAC's ultimate conclusion that the harassment the plaintiffs experienced on July 22, 2014, was race-based, TAC ¶ 147; *see Iqbal*, *supra*, 556 U.S. at

678–79.  Plaintiffs point to allegations that: (1) they were walking in a "predominately white" neighborhood, TAC ¶ 15; (2) Dumas testified at her administrative hearing that African Americans were not welcome in the neighborhood, TAC ¶¶ 62, 73; and (3) police stopped them "several times" and harassed them on other occasions, TAC ¶¶ 78–88.  Additionally, the TAC includes an allegation that "[t]he Police Accountability Task Force, tasked by Mayor Rahm Emanuel, indicates that of the more than 250,000 people stopped in the summer of 2014, 72% were African American."  TAC ¶ 95 (citing report).  Plaintiffs also cite a U.S. Department of Justice report's findings that a code of silence exists in the Chicago Police Department under which officers are expected to cover up one another's misconduct.  TAC ¶¶ 91–94 (citation omitted).  Under that code, "the City of Chicago usually refuses to answer Freedom of Information Act requests for names of individuals run through the system for warrants.  Thus, citizens have difficulty [obtaining] records concerning police ID checks and difficulty proving police harassment."  TAC ¶ 90.

Viewed in the light most favorable to plaintiffs, the TAC includes enough well-pleaded facts to state a plausible equal protection claim.  The TAC includes much more than the bare allegations of racialized intent rejected in other, nonbiding cases because it tells a story of racial profiling that holds together.  *Contrast Hunter v. Univ. of Chi.*, No. 17 C 3456, 2017 WL 5505020, at *2 (N.D. Ill. Nov. 16, 2017) (holding that "mere fact" that non-African American person was selected for the plaintiff's position did not state claim of intentional discrimination); *Hicks v. City of Chicago*, No. 15 C 06852, 2017 WL 4339828, at *8 (N.D. Ill. Sept. 29, 2017) (dismissing equal protection claim and stating that bare allegation that police officers did "not treat non-minorities this way during traffic stops" was a conclusion as was "the even broader

allegation that the Sheriff's Office as a whole targets racial minorities" (internal citations omitted)).

As plaintiffs argue, a materially identical complaint survived a Rule 12(b)(6) motion in *Smith*, *supra*. In *Smith*, Judge St. Eve held that a group of about thirty African American plaintiffs stated an equal protection claim based on Chicago's stop-and-frisk policy. The complaint in *Smith* cited the same reports and findings Casimir and Dumas cite, holding that the reports' findings plus the plaintiffs' experiences of inexplicable police harassment made their racial profiling claims plausible. *See Smith*, 143 F. Supp. 3d at 756.

Like the *Smith* plaintiffs, Casimir and Dumas plead here that they were repeatedly stopped for no good reason and subjected to searches in a predominately white Chicago neighborhood. TAC ¶¶ 73, 78. As in *Smith*, those allegations must be taken as true at the complaint stage of proceedings. The question becomes how to explain the otherwise inexplicable harassment. With favorable inferences, the considered findings of two government bodies, plaintiffs' repeated experiences, and the City's reticence to answer requests for information about police stops, supply a plausible explanation at the pleading stage: the plaintiffs were the victims of systemic racial profiling. *See Smith*, 143 F. Supp. 3d at 756; *Singleton v. City of E. Peoria*, No. 15-CV-1503, 2016 WL 1408059, at *6 (C.D. Ill. Apr. 8, 2016) (holding that "thinly pleaded" general allegations that "police officers in East Peoria pull over Black drivers with considerable more frequency than white drivers, if one considers the general 'driver's base' of East Peoria" stated a claim but concluded complaint was insufficient for the separate reason that the complaint included no allegation that the officer who stopped the plaintiff's car knew of the plaintiff's race).

The questions of which inferences can, or should, be drawn from the statistical evidence and the evidence of plaintiffs' treatment are better suited for summary judgment or a full evidentiary hearing. *See, e.g.*, *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011); *Chavez*, 251 F.3d at 646–47; *United States v. Brown*, --- F. Supp. 3d ---, 2018 WL 1278577 (N.D. Ill. 2018). Because Count V meets the *Twombly* and *Iqbal* standard by giving fair notice to defendants of the grounds on which plaintiffs' equal protection claim rests, the motion to dismiss Count V must be denied.

**D. Conspiracy Claim (Count VI)**

To withstand a Rule 12(b)(6) motion, a complaint must only "indicate the parties, the general purpose, and approximate date of the agreement to form a conspiracy so that the defendant has notice of the charges against him." *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 517 (7th Cir. 2007). Defendants press an argument very similar to one of their arguments on plaintiffs' First Amendment retaliation claim here. They say that the TAC's allegations that the defendant officers worked in the same police district as the officers sued in *Romanski* do not suffice to allege an agreement.

For essentially the same reasons it rejected that argument on Count III, the court disagrees. The pendency of *Romanski* coupled with the extent of the harassment alleged and favorable inferences allow this claim to squeak past the line of plausibility because, when viewed most favorably to plaintiffs, the harassment is hard to explain in the absence of coordination among the officers. *See Geinosky*, 675 F.3d at 748 (holding that conspiracy claim was plausible where the "the alleged facts . . . clearly suggest[ed] harassment by public officials" so pervasive that a conspiracy was a plausible explanation); *Johnson v. Vill. of Maywood*, No. 12 C 3014, 2012 WL 5862756, at *4 (N.D. Ill. Nov. 19, 2012) (holding complaint stated conspiracy claim

18

because on the facts alleged, it was plausible that an officer would have helped the plaintiff "but for collusion among the officers").

The court dismisses plaintiffs' conspiracy claims in part, however. Because the TAC's Due Process claims will be dismissed, the conspiracy claims must also be dismissed to the extent they seek to hold defendants liable for conspiring to violate the Due Process Clause. *Forgue v. City of Chicago*, 873 F.3d 962, 971 (7th Cir. 2017).

## V. CONCLUSION

For the reasons stated, Defendants' motion to dismiss certain counts of the Third Amended Complaint, ECF No. 95, is granted in part and denied in part. Counts IV and V of the Third Amended Complaint are dismissed and the conspiracy claim pleaded in Count VI is dismissed to the extent it is based on the underlying Due Process violations. A status conference is set for April 25, 2018, at 9:30 a.m.


Date: March 23, 2018                                    /s/
                                                        Joan B. Gottschall
                                                        United States District Judge